BARNEY *v.* WINONA & ST. P. R. Co.[1]

*(Circuit Court, D. Minnesota.* September 11, 1885.)

1. RAILROAD LANDS—WINONA & ST. PETER RAILROAD COMPANY—MINNESOTA CENTRAL RAILROAD COMPANY—ACT OF MARCH 3, 1865.

Under the decisions of the supreme court of the United States in *St. Paul & S. C. R. Co.* v. *Winona & St. P. R. Co.,* 112 U. S. 720, S. C. 5 Sup. Ct. Rep. 334, and *Winona & St. P. R. Co.* v. *Barney,* 113 U. S. 618, S. C. 5 Sup. Ct. Rep. 606, the grant of four sections made by the act of March 3, 1865, must be adjudged a grant of quantity, and not one of lands in place.

2. SAME—DEDUCTION UNDER ACT OF 1865, § 3.

The term "any lands which may have been granted to the territory or state of Minnesota," in the proviso of section 3 of the act of 1865, and which are to be deducted from the grant made by that act, includes all land the title to which had passed to the territory or state of Minnesota, whether these lands were lands in place or indemnity lands.

3. SAME—DEDUCTION, HOW DETERMINED.

As, within the overlapping limits of the Winona & St. Peter Railroad and the Minnesota Central Railway, neither company received anything like its quota of coterminous lands, the proper deduction to be made from the grant of 1865 can be determined by ascertaining the amount of lands within those limits which had theretofore passed to the Minnesota Central Railroad Company under the act of 1857.

In Equity.

*Gordon E. Cole,* for plaintiff.

*Thos. Wilson,* for defendant.

BREWER, J. In the case of *Barney* against *The Winona & St. Peter Railroad Company,* the plaintiff, Mr. Barney, and others had a contract with the defendant, the Winona & St. Peter Railroad Company, entitling them to all the lands to be earned by the Winona & St. Peter Company in the construction of its road for a certain distance. Upon the construction of that road the plaintiffs brought this action to compel the defendant to convey to it lands to which they claim they are entitled by virtue of that contract. Several years ago they obtained a decree in this court for the conveyance of 197,000 and odd acres. From that decision the defendant appealed to the supreme court of the United States, which reversed the decree, and remanded the case, with these instructions: "The case must therefore go back, that the proper reduction may be made by reason of this interference of the two grants, and the elder grant be deducted from the extension made by the act of 1865."

What reduction, under that ruling of the supreme court, must be made? is the question now presented. The deduction arises from the fact that the Minnesota Central road crosses the Winona & St. Peter, and at the point of junction there was an interference between the land grants of the two roads given them by the act of March 3, 1857.

The act of March 3, 1865, purports to give an additional four sections, with this proviso: "That any lands which may have been

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

granted to the territory or state of Minnesota"—and that refers simply to the lands given by the act of 1857—"for the purpose of aiding in the construction of any railroad, which lands may be located within the limits of this extension of said grant or grants, shall be deducted from the full quantity of lands hereby granted;" that is, from the four sections granted by the act of 1865 to this defendant road was to be deducted any lands granted to any other road by prior grant. There was a very long discussion between counsel as to the effect and meaning of this act of 1865. On one side it was contended that the meaning of this act had been determined by the supreme court in the case of *St. Paul & Sioux City Railroad Co.* against *The Same Defendant,* 112 U. S. 720, S. C. 5 Sup. Ct. Rep. 334; and in the present case, in the same court, 113 U. S. 618, S. C. 5 Sup. Ct. Rep. 606; and on the other side it was with equal zeal contended that the true construction of that act had not been determined in either case, and that any language to be found in the opinion therein which might look to an interpretation of that act must be regarded as pure *dictum,* and not called for by the necessities of the case.

With the highest respect which we both feel for the members of that court, and with the utmost deference to their decision, we both of us are strongly of the opinion that the construction which is indicated in the language of these two opinions is not the true construction of that act. In these opinions they say that this grant of land of four sections was not intended as an extension of the grant of lands in place, but was a mere grant of lands in quantity. Without discussing that question at length, it seems to us very clear that the intention of congress in the later act was simply to make an extension of four sections, to be taken in the same manner as the grant of the six sections, and subject to the same conditions; meaning, thereby, to extend it from a grant of six sections in place to a grant of ten sections in place, and with the indemnity limits extended from 15 to 20 miles. As I said before, I shall not discuss that question at length, nor name the various reasons which, on examination of the statute, have led us to think that this is the true construction. The decision of these two cases seems to settle the question adversely to the opinion which we entertain, and of course those decisions are conclusive upon us.

In the case of *St. Paul & Sioux City Railroad Co.* against *The Winona & St. Peter Railroad Co.,* Mr. Justice MILLER, speaking of the acts of 1864 and 1865, says:

"There is nothing in either of these statutes which indicates or requires that the six-mile limit of the original grant is to be enlarged so that, within a limit of ten miles, all the odd sections fall immediately within the grant on the location of the road. Such language was used in the fourth section of the act concerning the Union Pacific Railroad in 1864, only a few weeks later than the act of that year under consideration." 5 Sup. Ct. Rep. 339.

And after some words with reference to that act he says:

"In addition to this significant fact, both the act of 1864 and of 1865 speak of the additional sections to be *selected,*—a word wholly inapplicable to lands in place which are not ascertained by selection, but are fixed and determined by the location of the line of the road. The act of 1865, which is to be considered *in pari materia* on this point, provides that these lands shall be indicated by the secretary of the interior." 5 Sup. Ct. Rep. 339.

In the other case, (this very case in the supreme court,) Mr. Justice FIELD says:

"As to the effect of the reservation in the third section of the act of 1865 of lands previously granted to Minnesota for the purpose of aiding in the construction of any railroad, there should be little doubt. The grant by the act of 1857 is one of description; that is, of land in place, and not of quantity. * * * [That is, the original grant.] The act of 1865 enlarges the quantity from six sections to ten, and the indemnity limits from fifteen miles to twenty. The character of the grant, so far as the six sections are concerned, is not thereby changed from one of lands in place, or by description, to one of quantity. The use of the terms 'quantity of lands granted' in the first section, in referring to the amount granted by the act of 1857, is of no significance. It is the same thing as though the act had used the words 'six sections' instead of the word 'quantity,' and had said that they should be increased to ten sections. The four sections are to be selected by the secretary of the interior beyond the twelve and within the twenty miles limit; and as to them the grant may be regarded as one of quantity, though the coterminous principle applies to them, and they are to be selected along and opposite the completed road." 5 Sup. Ct. Rep. 611.

In those cases it seems to us that the construction of the act with reference to this question was fairly before the court, and that this language can in no proper sense be considered as mere *dictum,* but is to be taken as the determination of the court as to the true construction of that act of 1865. So we hold, as the first proposition, that under the decisions of the supreme court in *St. Paul & S. C. R. Co.* v. *Winona & St. P. R. Co.*, 112 U. S. 720, S. C. 5 Sup. Ct. Rep. 334, and *Winona & St. P. R. Co.* v. *Barney*, 113 U. S. 618, S. C. 5 Sup. Ct. Rep. 606, the grant of four sections made by the act of March 3, 1865, must be adjudged a grant of quantity, and not one of lands in place.

The next question to be considered arises on the third section of the act of 1865, and the proviso states:

"Provided, further, that any lands which may have been granted to the state of Minnesota for the purpose of aiding in the construction of any railroad, which lands may be located within the limits of this extension of said grant or grants, shall be deducted from the full quantity of lands hereby granted."

"Lands which may have been granted to the territory or state of Minnesota." Now, the word "grant" in these land acts has two significations. It is used oftentimes technically to refer to lands in place which are spoken of as granted lands, in contradistinction to lands which are to be selected, or indemnity lands. And then it is oftentimes used, both in land legislation and opinions, to refer to all lands the title to which has passed either as lands in place or by se-

lection. It is contended, on one side, that it has the narrow significa-
tion, and that the only lands excluded from the grant of 1865 are
those lands in place which were, in the narrow signification, "lands
granted." On the other hand, it is contended that it has the broad
signification, and includes all lands to which the title had passed by
act to the state of Minnesota. I think the latter is the true significa-
tion. Mr. Justice FIELD, in this case, says:

"This reservation of the lands previously granted to Minnesota from the
grant of the additional four sections—that is, from the extension of the origi-
nal grant of 1857—was only a legislative declaration of that which the law
would have pronounced independently of it." 5 Sup. Ct. Rep. 611.

That is, in other words, congress, by the act of 1865, meant to
grant, as it could only grant, lands the title to which it still held, and
which had not theretofore passed to the state of Minnesota. That
would be the law, independent of any express declaration in the stat-
ute, and this expression, meaning the same thing, as Mr. Justice FIELD
says, would exclude all lands the title to which had passed to the
state of Minnesota by any previous grant. And so, secondly, we
hold that the term "any lands which may have been granted to the
territory or state of Minnesota," in the proviso of section 3 of said
act, includes all land the title to which had passed to the territory
or state of Minnesota, whether these lands were lands in place or in-
demnity lands, and the word "granted" has the broad rather than
the narrow signification.

The third question thus arises: "Any lands which may have been
granted to the territory or state of Minnesota for the purpose of aid-
ing in the construction of any railroad, which lands may be located
within the limits of this extension of said grant or grants," "located
within the limits of this extension." If this grant be a grant of lands
in quantity, and not a grant of lands in place or by description, how
can it be said that there was any area of extension? That seems to
imply certain definite limits to the land as granted. It might mean,
inasmuch as the act of 1865 enlarged the indemnity limits from 15
to 20 miles, simply the extra limits within which these four sections
were to be selected, and did not include the narrow limits within which
the indemnity lands could be selected under the act of 1857. But, as
they have said that these four sections were to be selected within the
limits of 6 and 20 miles, it seems to us that the only fair interpreta-
tion is that the area within the 6 and 20 miles limits was the body of
land which could be said to be "within the limits of this extension"
of said grant or grants.

It is conceded by counsel on both sides that neither road could get
within these overlapping limits anything like its quota of coterminous
lands, and that grant of four sections was to be of coterminous lands,
so the supreme court says. Therefore, thirdly, we would say that, as
it is conceded that within the overlapping limits of the Winona & St.
Peter road and the Minnesota Central Railroad neither company

received anything like its quota of coterminous lands, the proper deduction can be determined by ascertaining the amount of lands within those limits which had theretofore passed to the Minnesota Central Railroad Company under the act of 1857.

The case will therefore be referred to the two masters heretofore appointed, and who have made prior reports, to report the number of acres which had, prior to March 3, 1865, passed to the Minnesota Central Railroad within 15 miles of its line, and between the 6 and 20 miles limits of the Winona & St. Peter Railroad Company's line; and this amount will be the amount of deduction. Then, further, in order that if the construction we have placed upon these decisions of the supreme court be incorrect, they may have the needful *data* before them to make the proper reduction, without sending it back to this court, the masters will also report separately the amount of lands which had, prior to March 3, 1865, passed to the Minnesota Central Railroad Company within the following limits: (1) The amount within 15 miles of the Minnesota Central line, and within the 15 and 20 miles limits of the Winona & St. Peter Railroad. (2) The amount within 6 miles of the Minnesota Central Line, and within the 6 and 10 miles limits of the Winona & St. Peter Railroad Company's line. (3) The amount within the 6 and 15 miles limits of both lines. (4) The amount within the 6 and 15 miles limits of the Minnesota Central, and within the 15 and 20 miles limits of the Winona & St. Peter Company's line.

We do this so that if the case should go to the supreme court they can determine and make the deduction, having all the *data* before them.